SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| Trump Village Section 4, Inc. and Igor Oberman, <br><br> Plaintiffs, <br><br> -against- <br><br> Jacob Vaynshteyn, <br><br> Defendant. | **COMPLAINT** <br><br> Index No.: 527027/2025 |

Plaintiffs TRUMP VILLAGE SECTION 4, INC. ("TV4") and IGOR OBERMAN ("Oberman" and together with TV4 "Plaintiffs") by their attorneys Veridian Legal P.C., as and for their Complaint hereby alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. After the death of his mother, Jacob Vaynshteyn ("Defendant" or "Vaynshteyn") began a campaign of harassment and intimidation against Plaintiffs because of their refusal to allow him to illegally reside in his mother's apartment.

2. Vaynshteyn was named administrator of his mother's estate four years ago. Since then, he has twice unlawfully moved into the apartment complex and has refused to vacate or sell the apartment.

3. When TV4 sought to protect its shareholders against an unlawful tenant, Vaynshteyn began vandalizing the property, harassing tenants and shareholders, and gaining access using a lost or stolen key fob.

1

4. Vaynshteyn then began using the legal system to harm Plaintiffs, bringing baseless actions in Small Claims Court and Civil Court.

5. Defendant's conduct has caused a nuisance for the shareholders of TV4 and this action is brought to abate said nuisance, recover damages for interference with the quiet enjoyment of TV4's residential community, and obtain permanent injunctive relief protecting TV4's elderly residents from Vaynshteyn's continued harassment and trespass.

## THE PARTIES

6. TV4 is a 1,144-unit cooperative complex located in Coney Island, Brooklyn. While initially constructed in 1960's as part of New York's Mitchell-Lama Housing Program, TV4 residents opted out of the program in 2007. TV4 is now a NORC – a Naturally Occurring Retirement Community – a complex in which senior citizens constitute a large portion of residents.

7. Oberman is TV4's General Manager and Assistant Secretary as well as a New York State attorney in good standing.

8. Oberman resides on Staten Island in the State of New York.

9. Defendant Jacob Vaynshteyn ("Vaynshteyn") is the administrator of the Estate of Anna Vaynshteyn.

10. Defendant is not an authorized resident of TV4.

11. Defendant is not a shareholder of TV4.

## STATEMENT OF FACTS

12. Anna Vaynshteyn was a resident of TV4 until her death on December 31, 2020.

13. After her death, TV4 gave Defendant an opportunity to transfer the apartment ownership from his mother's estate to his individual name..

2

14.    However, after receiving his application, the board determined that Defendant was not a qualified owner and denied his request to transfer the unit so that he can reside in the unit.

15.    Despite not being on the proprietary lease, and his application being denied, Vaynshteyn continued to reside in his mother's home after her death.

**The Landlord Tenant Action**

16.    On March 27, 2023, TV4 served on Defendant a Notice of Termination (the "Notice").

17.    The Notice alleged that Defendant had usurped his mother's estate, violated his authority as executor, and illegally subletted the premises to himself.

18.    The Notice informed Defendant that he has no right to live in the unit and directed him to vacate the premises by April 12, 2023.

19.    When Defendant did not comply with the Notice, on April 13, 2023, TV4 initiated a holdover proceeding against him.

20.    On January 16, 2024, Defendant filed a pro se answer in case.

21.    Defendant alleged he was entering the unit not as an "undertenant" but rather as "Executor of the Estate."

22.    Defendant continued to accuse TV4 of "legal chicanery" and attempting to "expedite the sale" of the property to collect a 20% flip tax.

23.    On March 11, 2024, the parties entered into a stipulation resolving the proceeding.

24.    Pursuant to the terms of the stipulation, TV4 received a final judgment of possession against Defendant and the Estate.  The warrant was stayed so long as Defendant 1)

3

continued to pay maintenance beginning April 2024; 2) on or before April 30, 2024, listed the property for sale with a licensed real estate broker; 3) vacated the premises on or before June 14, 2024; and 4) provided TV4 with the opportunity to make reasonable inspections of the premises, including one walkthrough inspection on June 17, 2024 at 10 a.m.

25.     To ensure that the property would be listed and to ensure a smooth process, TV4 agreed to provide Defendant with a credit of $3,000 toward closing costs if he utilized one of three real estate broker agencies, NYC Realty Brokers LLC, Remax Edge or SPR Realty LLC .

26.     These brokers were selected because they had a history of selling units in TV4.

27.     On October 28, 2024, Defendant retained an attorney to represent him.

28.     On December 5, 2024, Defendant filed two orders to show cause.  The first was to have his counsel removed as his attorney.

29.     The second order to show cause was to hold TV4 in contempt for allegedly "cancell[ing] their payment portal system and refus[ing] to resolve the issue."

30.     More specifically, Vaynshteyn falsely asserted that he was entitled to make payments through ClickPay but TV4 had canceled the portal.

31.     In reality, Vaynshteyn was basing his claims on an e-mail wherein TV4 announced its plan to discontinue use of ClickPay and asked tenants to find alternative methods of payments.  Notably, at no time has ClickPay been disabled and Vaynshteyn has always maintained the ability to make payments using the ClickPay portal.

32.     More importantly, the stipulation does not require payment through ClickPay, specifically, instead providing that Vaynshteyn would be given a "portal…to pay online."

4

33. On December 16, 2024 Vaynshteyn's motion was resolved by stipulation. Vaynshteyn was granted permission to proceed pro se. Vaynshteyn also withdrew his motion for contempt, since he was able to schedule online payments.

34. The stipulation further provided an invitation for Vaynshteyn to contact TV4's counsel to resolve any payment issues he might have in the future.

35. On or about May 19, 2025, Defendant once again moved into TV4 against the terms of the stipulation.

36. Upon learning that Defendant was unlawfully residing on the premises, TV4's attorney sent him a good faith letter requesting he vacate the premises.

37. Despite this, Defendant continued his actions and, on August 5, 2025, TV4 filed a warrant of eviction.

38. On August 20, 2025, Defendant filed a 55-page order to show cause with the court. In it, he falsely accused TV4 of engaging in "retaliatory lawfare."

39. On September 15, 2025, Defendant once again filed a notice of motion. This time, Defendant admitted to harassing members of TV4 and the board and requested Plaintiff's law firm be removed from his eviction proceeding.

40. TV4 opposed the motion and, on September 29, 2025, the court denied the motion.

**Abuse of the Judicial System**

41. On January 31, 2025, Vaynshteyn filed a small claims action against Plaintiffs.

42. The action, seeking $1,787,78, was for breach of a contract from November 24, 2024.

43. In an email dated May 2, 2025, Vaynshteyn asserted he was seeking damages in the amount of $787.78 caused by a "breech [sic] in the stipulation of settlement" because he needed to "travel from overseas to file an order of contempt for the management to reactivate its online payment system."

44. On September 30, 2025, Vaynshteyn's small claim action was dismissed.

45. On July 22, 2025, Defendant filed a petition against Plaintiffs in Housing Court.

46. The petition falsely stated Plaintiffs "used force or said they would use force or implied the use of force," "removed the door to the apartment or made the lock to the apartment not work, or changed the, lock on the apartment door without giving a key to the new lock to the tenant/petitioner," and "repeatedly caused or permitted acts or omissions that substantially interfered with or disturbed the comfort, peace or quiet of the tenant/petitioner."

47. The petition asserted that, on July 18 and July 19, 2025, management used security to harass Defendant.

48. On August 11, 2025, the Defendant retained an attorney to represent him in the action.

49. On August 25, 2025, the Defendant's attorney filed an order to show cause to withdraw as counsel.

**Defendant Harasses Shareholders**

50. TV4 is a private community.

51. To access the buildings, a resident must use a key fob to unlock the front door.

52. The key fobs are also a security device, logging entries into buildings to ensure the safety of each resident.

6

Case 1:26-40732-ess   Doc 4   Filed 04/15/26   Entered 04/15/26 12:21:53

53.     Knowing he was not permitted on the premises except for very specific purposes, Defendant gained access to a lost key fob or stole a key fob and began using it for his own personal benefit.

54.     Defendant used the stolen key fob to trespass on the property at least 191 times between May 19, 2025 and July 21, 2025.

55.     Vaynshteyn's trespass on the premises has caused significant disruption to the tenants of TV4.

56.     Defendant vandalized the property, causing damage to multiple poster hang frames used for internal memos for residents.

57.     Defendant also rang the doorbell of TV4 residents at all hours, including 9:00 p.m. on a Sunday night.  The appearance of a strange man ringing a doorbell so late at night put fear in the shareholder, causing her to inquire whether the man lived on her floor and causing her concern over where he had gone thereafter.

58.     Because of his continued harassment, Plaintiffs have needed to increase security.

59.     On September 11, 2025, Defendant unlawfully entered the management office and caused a disturbance.  As a result of Defendant's conduct, security needed to be involved.

60.     That same day, Defendant harassed members of the board by physically approaching them and confronting them.

61.     Defendant's conduct led shareholders to fear for their safety.

**Defendant's Unsolicited Communications to Board Members**

62.     Defendant's harassment of shareholder was not confined to in-person attacks.

63.     On or about July 30, 2025, Defendant sent a 25-page packet to board members via the United States Postal Service (the "July 30 Letter").

7

64.     The package contained a typed letter.  In the letter, Vaynshteyn wrote in bold and underlined writing that Plaintiff Oberman's behavior is "textbook sociopathic behavior by an employee."

65.     Defendant continued that "[t]he individual poses a serious danger and threat to every shareholder."

66.     Defendant falsely stated that Oberman has a "long-detailed history of harassment, corruption, scandal, and a ready willingness to step on others."

67.     Defendant threatened the TV4 Board that "If you do not remove this employee, then you are individually and collectively complicit in the victimization and abuse of the estate and you are violating your inherent duties and responsibilities."

68.     Defendant claimed that Oberman "completely violated my rights with absolute disregard."

69.     Defendant lobbed more threats at the TV4 Board, falsely asserting that "[i]f you ignore this and continue to allow him to come to work after his behavior, with his record, then you are responsible for engaging in a civil conspiracy, as well as aiding/abetting wrongful acts."

70.     Finally, Defendant falsely asserted that "Igor Oberman and management have a scheduled court date to answer for extreme abuse and harassment."

71.     The attachment to the letter included a verified petition filed by Defendant against Plaintiffs.

72.     Upon information and belief, Defendant also went door to door harassing shareholders, knocking on their door, and asking them to sign a petition.

**FIRST CAUSE OF ACTION**
**(Tortious Interference with Contract/Prospective Economic Advantage on behalf of Oberman)**

8

73.     Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

74.     Plaintiff Oberman is the general manager of TV4.

75.     As part of his employment, Oberman is renegotiating a renewal of his employment contract with TV4.

76.     Defendant engaged in a course of unlawful harassment with the intent of destroying Plaintiff's contract with TV4.

77.     Plaintiff relies on his good reputation to be the manager of TV4.

78.     During his campaign of harassment against Plaintiff Oberman, Vaynshteyn engaged in numerous wrongful means, including criminal conduct, threats, fraud, misrepresentation, and economic pressure that exceeded simple persuasion.

79.     As a result of Defendants' actions, Plaintiffs have been damaged.

80.     That, by reason of the foregoing, Plaintiffs have been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

**SECOND CAUSE OF ACTION**
**(Defamation of Plaintiff Oberman)**

81.     Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

82.     The information Defendant disseminated in the July 30 Letter, or caused to have disseminated to Board Members about Plaintiff Oberman is false and defamatory, not the subject of any privilege, and is viewable by many third parties.

9

83. Defendant had actual knowledge that the information he published, or caused to be published, about Plaintiff Oberman was false and knew or should have known that the information they published about him was false and defamatory.

84. Defendant acted with knowledge of the falsity of these statements in the July 30 Letter and the implications therefrom, reckless disregard for the truth, and/or with malicious intent, both presumed and actual, in knowingly publishing, posting, and widely disseminating such false statements to third parties.

85. These statements defame and otherwise impugn Plaintiff Oberman's character, integrity, and reputation as the manager. Further, the statements go on to charge Plaintiff Oberman with financial and criminal improprieties disparage him in his profession, trade, and/or business. Such statements are libelous *per se*.

86. The statements are libelous *per se,* so that general damages may be presumed as a matter of law.

87. Defendant's unlawful conduct has caused and will continue to cause Plaintiff Oberman imminent, irreparable injuries for which there are no adequate legal remedies. Accordingly, Plaintiff Oberman is entitled to permanent injunctive relief.

88. Because Defendant has placed Plaintiffs' personal character and reputation publicly at issue, Plaintiffs are entitled to a declaratory judgment that Defendants' statements are false.

89. As a consequence of the Defendant's conduct, Plaintiff Oberman's reputation has been injured, and the Plaintiff Oberman has suffered economic loss, as previously described.

10

Case 1:26-40732-ess Doc 4 Filed 04/15/26 Entered 04/15/26 12:21:53

90.     That by reason of the foregoing, Plaintiff Oberman has been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## THIRD CAUSE OF ACTION
### (Trespass to Land)

91.     Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

92.     Plaintiff TV4, as a corporation, owns the land and courtyards for Trump Village.

93.     Defendant was aware that Plaintiff TV4 owns and is in possession of Trump Village.

94.     Without permission or legal right, Defendant repeatedly and intentionally entered upon TV4's premises-including common areas, building corridors, management office, and shareholder residential floors-after being denied shareholder status and for no legitimate reason.

95.     Defendant used and retained key fobs assigned to his late mother and/or subsequently obtained a "lost" key fob, knowing he was not authorized to access the property, and entered the premises on at least 191 occasions between May 19, 2025, and July 21, 2025.

96.     On September 11, 2025, Defendant unlawfully entered the management office and caused a public disturbance, requiring security intervention.

97.     Defendant's unauthorized entries were wrongful, knowing, and without TV4's consent.

98.     As a result of Defendant's repeated trespasses, TV4 has been damaged, including but not limited to the need for increased security measures, staff time, and disruption to normal operations, and damage based on Defendant unlawfully placing signs in the building.

11

Case 1-26-40732-ess Doc 4 Filed 04/15/26 Entered 04/15/26 12:21:53

99. That by reason of the foregoing, Plaintiff TV4 has been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## FOURTH CAUSE OF ACTION
### (Private Nuisance)

100. Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

101. TV4 is a residential cooperative, whose shareholders and residents are entitled to the quiet enjoyment and peaceful use of their homes and common areas.

102. Defendant, by his repeated and unauthorized entries onto the property, vandalism of TV4's facilities (including, but not limited to, damaging a poster/cork board area), and ringing doorbells of residents at all hours, including as late as 9:00 p.m. on Sundays, has substantially and unreasonably interfered with the comfort, safety, and quiet enjoyment of TV4's residents.

103. Defendant's conduct, as detailed above, has caused various residents to experience fear, annoyance, and intimidation, including at least one resident expressing concerns for personal safety as a result of Defendant's late-night appearances and repeated solicitations.

104. Defendant's actions have required TV4 to undertake costly remedial measures, including but not limited to retaining attorneys to ensure Defendant does not enter the building adding additional building security, and addressing physical property damage.

105. Defendant's conduct and resulting interference with TV4 residents' use and enjoyment of the property constitute a private nuisance.

12

106. That by reason of the foregoing, Plaintiff TV4 has been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## FIFTH CAUSE OF ACTION
### (Conversion)

107. Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

108. Plaintiff TV4 owns and has the superior right to possess all property and access devices issued for use at its cooperative complex, including but not limited to key fobs, access credentials, and related security equipment assigned to residents and personnel for building entry and internal access control.

109. Defendant wrongfully exercised dominion and control over TV4's property by retaining, using, and/or obtaining a "lost" key fob for the purpose of accessing TV4's buildings and common areas on at least 191 occasions between May 19, 2025, and July 21, 2025, and by continuing to access the premises thereafter without authorization.

110. Defendant's acts were without TV4's consent, were inconsistent with and in derogation of TV4's superior possessory rights, and constitute conversion.

111. As a direct and proximate result of Defendant's conversion, TV4 suffered damages, including but not limited to costs to investigate and remediate security breaches, replace the key fob, to increase staffing and security oversight, and to address operational disruptions.

13

112.     That, by reason of the foregoing, Plaintiff TV4 has been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## SIXTH CAUSE OF ACTION
### (Abuse of Process TV4)

113.     Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

114.     Defendant willfully employed regularly issued judicial process, including but not limited to orders to show cause, motions, and petitions filed in Housing Court and Small Claims Court, after entry of a stipulation granting TV4 a final judgment of possession and setting forth Defendant's obligations regarding payment, listing, inspections, and vacatur.

115.     Such process included, inter alia: (i) a motion for contempt premised on alleged inability to use the payment portal despite continued undisrupted access and later withdrawing the motion as moot; (ii) a 55-page order to show cause accusing TV4 of "retaliatory lawfare" and seeking relief intended to obstruct TV4's enforcement of the stipulation and judgment; (iii) a Housing Court petition falsely alleging forcible or coercive self-help, lock changes, and harassment by TV4; and (iv) applications seeking to disrupt or disqualify TV4's counsel and impede TV4's property management.

116.     Defendant used that process with intent to harm TV4 without excuse or justification and to obtain collateral objectives outside the proper scope of the proceedings, including but not limited to coercing TV4 to allow continued possession contrary to the stipulation and judgment; interfering with TV4's business relationships with brokers and

14

prospective purchasers; burdening TV4's operations to deter inspections and showings; and generating extra-judicial intimidation and reputational harm through the litigation filings.

117. Defendant thereby perverted judicial process to achieve ends for which it was not designed, deploying serial, meritless, and bad-faith applications as leverage rather than to secure a proper adjudication on valid claims.

118. As a direct and proximate result, TV4 suffered damages including attorneys' fees and costs incurred responding to meritless filings, diversion of managerial and staff resources, and reputational harm.

119. That by reason of the foregoing, Plaintiff TV4 has been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## SIXTH CAUSE OF ACTION
### (Malicious Prosecution)

120. Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

121. On or about January 31, 2025, Defendant, without probable cause and acting with actual malice, commenced a Small Claims Court action against Plaintiffs, including Igor Oberman personally, seeking monetary damages premised on purported breach of a November 24, 2024 contract and other fabricated claims relating to TV4 management and Oberman's actions as General Manager.

15

Case 1-26-40732-ess   Doc 4   Filed 04/15/26   Entered 04/15/26 12:21:53

122.    Defendant initiated the Small Claims Court action for an improper purpose, to intimidate, harass, and pressure Oberman, and to leverage the threat of litigation for collateral objectives unrelated to securing a legitimate adjudication.

123.    Plaintiff Oberman was not a party to the stipulation, is an employee of TV4, and there was no legitimate reason to include him in the action.

124.    On September 30, 2025, the Small Claims Court action was terminated in Plaintiffs' favor and dismissed, thereby constituting a final termination on the merits in Plaintiffs' favor.

125.    Defendant's commencement and maintenance of the Small Claims Court action caused Plaintiffs TV4 and Oberman to incur legal fees, suffer damage to Plaintiff's Oberman's personal and professional reputation, and endure inconvenience and disruption to Plaintiffs' normal affairs.

126.    As a direct and proximate result of Defendant's malicious prosecution, Plaintiffs have sustained damages.

127.    That by reason of the foregoing, Plaintiff TV4 has been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendant, containing the following relief:

A.    An award of damages against Defendant in an amount to be determined at trial to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for the costs of this action and reasonable attorney fees;

16

B.      An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

C.      Prejudgment interest on all amounts due;

D.      An award of costs that Plaintiffs have incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiffs' reasonable attorneys' fees and costs to the fullest extent permitted by law; and

E.      Such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        October 6, 2025

Yours, etc.,

DANIEL S. SZALKIEWICZ, ESQ.
CALI P. MADIA, ESQ.
Veridian Legal, P.C.
*Attorneys for Plaintiffs*
23 W. 73rd Street, Suite 102
New York, New York 10023
Tel: (212) 706-1007
*daniel@veridianlegal.com*

17

Case 1-26-40732-ess    Doc -4    Filed 04/15/26    Entered 04/15/26 12:21:53

## VERIFICATION

Igor Oberman, being duly sworn, deposes and says that he is the Plaintiff herein and has read the foregoing Verified Complaint and knows its contents; that same is true to his knowledge, except as to those matters herein alleged upon information and belief and, as to those matters, he believes them to be true

I affirm this 6th day of October, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.



Igor Oberman